**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**EDUCATIONAL CREDIT MANAGEMENT CORPORATION,**

      **Appellant,**

      **v.**

**ALAN MURRAY and CATHERINE MURRAY,**

      **Appellees.**

Case No. 16-2838

## MEMORANDUM & ORDER

This matter comes before the court upon Appellant Educational Credit Management Corporation ("ECMC")'s Notice of Appeal from Bankruptcy Court (Doc. 1). The matter is fully briefed. The court granted Amicus Parties National Association of Consumer Bankruptcy Attorneys ("NACBA") and National Consumer Bankruptcy Rights Center ("NCBRC")s' motion to file an amicus brief (Doc. 10).

**I.    Background**

Appellant ECMC appeals the United States Bankruptcy Court's decision to partially discharge appellees' student loans pursuant to 28 U.S.C. §§ 158(a)(1), (c)(1)(A). Appellant argues that appellees Alan and Catherine Murray did not meet their burden of establishing an undue hardship as required by § 528(a)(8) and as interpreted by the Tenth Circuit, because they failed to show any of the three elements enumerated in *Brunner v. New York State Higher Education Services Corporation*, 831 F.2d 395, 396 (2d Cir. 1987).

Appellees argue that they met all three elements of the undue hardship test and that requiring them to repay the full extent of their student loan debt would contravene the Bankruptcy Code's

-1-

purpose of providing a fresh start to honest but unfortunate debtors. They urge this court to uphold Judge Somers's decision because it was based on debtors' testimony and the unopposed evidence admitted at trial.

The amici additionally suggest that debtors should not be required to participate in income-driven repayment programs ("IDRs"), as an alternative to bankruptcy, when it is evident that debtors would never be able to repay their loans in full. Amici suggest that IDRs should not be considered in the undue hardship analysis.

## II. Legal Standard

### A. Standard of Review

This court functions as an appellate court when reviewing a bankruptcy court's decision, and is authorized to affirm, reverse, modify, or remand the bankruptcy court's order. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013. Legal decisions of the bankruptcy court are reviewed de novo. *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1305 (10th Cir. 2004). But the bankruptcy court's factual findings shall not be set aside unless they are clearly erroneous. Fed. R. Bankr. P. 7052 (adopting Fed. R. Civ. P. 52(a)(6)). And the court will give those factual findings due regard given the bankruptcy court's opportunity to judge the facts first hand, including the credibility of witnesses. *Id.*

"A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake has been made." *In re Yellow Cab Co-op. Ass'n v. Metro Taxi, Inc.*, 132 F.3d 591, 597 (10th Cir. 1997)). The United States Supreme Court further defines the clearly erroneous standard by explaining that

> If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985) (applied in the context of a bankruptcy appeal in *In re Blinder, Robinson & Co. v. Stellatos*, 124 F.3d 1238, 1241 (10th Cir. 1997)).

## B. Discharging Student Loan Debt under § 523(a)(8)

11 U.S.C. § 523 sets out the exceptions to the dischargability of debt in bankruptcy. Section 523(a)(8) provides that educational loans are not dischargeable "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). "This provision was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation thereby absolving themselves of the obligation to repay their student loans. *In re Innes*, 284 B.R. 496, 502 (D. Kan. 2002) (quoting *In re Hornsby*, 144 F.3d 433, 437 (6th Cir. 1998)). The Tenth Circuit in *Polleys* further examined § 523(a)(8)'s legislative history, noting that the Report of the Commission on Bankruptcy also recommended that the undue hardship exception to discharge should apply only during the first five years after graduation, and that thereafter it should be lifted because "in some circumstances the debtor, because of factors beyond his reasonable control, may be unable to earn an income adequate both to meet the living costs of himself and his dependents and to make the educational debt payments." *Id.*

In adopting the *Brunner* test, the Tenth Circuit specifically warned against an overly restrictive interpretation of the test, because it would prevent the Bankruptcy Code's goal of providing a fresh start for the honest but unfortunate debtor and "cause harsh results for individuals seeking to discharge their student loans." *Id.* at 1308 (citing *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918)).

Under the *Brunner* test, debtors must show by a preponderance of the evidence, each of three elements:

(1) that [they] cannot maintain, based on current income and expenses, a "minimal" standard of living for [themselves and their] dependents if forced to repay the loans; (2)

-3-

> that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor[s have] made good faith efforts to repay the loans.

*Polleys*, 356 F.3d at 1307 (quoting *Brunner*, 831 F.2d at 396). In adopting the *Brunner* test, the Tenth Circuit noted that the analysis would necessarily include a consideration of all the facts and circumstances of each case. However, the court noted that judges should have "the discretion to weigh all relevant considerations, [and that] the terms of the test must be applied such that debtors who truly cannot afford repay their loans may have their loans discharged." *Id.* at 1309.

### A. Whether debtors can maintain a minimal standard of living if forced to repay their loans

This first prong of the *Brunner* test should serve as a starting point in assessing the debtor's circumstances. *Polleys*, at 1309. Generally, student loans should not be dischargeable before the debtor shows he is unable to earn sufficient income to maintain a minimal standard of living while repaying educational debt. *Id.* A minimal standard of living is "living within the strictures of a frugal budget in the foreseeable future." *In re Innes*, 284 B.R. at 504 (quoting *In re Ritchie*, 254 B.R. 913, 918 (Bankr. D. Idaho 2000)).

Judge Somers's factual determinations about debtors' current standard of living and financial circumstances were not clearly erroneous. The court finds factual support for the Bankruptcy Court's decisions in the record before it and gives appropriate deference to Judge Somers as the fact finder, given that he viewed the evidence, testimony, and made credibility determinations firsthand.

The court also finds that Judge Somers correctly decided that debtors cannot maintain a minimal standard of living if forced to repay their loans in full, but that they could maintain a minimal standard of living if required to repay the principal balance on the loans. Judge Somers described minimal standards of living to include: shelter; utilities; food and personal hygiene products; insured

vehicles and related fuel and maintenance costs; a plan for medical and end of life expenses; and some "small diversion or recreation, even if it is just watching television or keeping a pet." *In re Murray*, 563 B.R. 52, 58–59 (Bankr. D. Kan. 2016) (citing *In re Ivory*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001)).

After reducing debtors' monthly expenses for transportation, groceries and meals outside the home, and medicine and other medical or dental costs not covered by insurance, the Bankruptcy Court determined that debtors' estimated monthly disposable income was $1,658. The court noted that this amount does not include funds for emergencies, savings, retirement, or vacations; it only allocates $50 for entertainment apart from home television, and would provide debtors a minimal standard of living. The court noted that debtors'

> income has been stable for the last several years; it is not temporarily reduced by health issues or extraordinary events. Both Debtors are in their late forties; there is no suggestion that they have intentionally sought employment below their earning potential. Rather, Alan temporarily left the music profession in hopes of increasing his income, but that employment was not successful. Debtors truly cannot afford to pay their loans in full.

*Id.* at 59. Debtors testified that they could pay between $200 and $500 monthly on their student loans.

The bankruptcy court found that ECMC presented two payment-in-full options for debtors that required payments of either $3,945 or $2,614 monthly. As of September 2016 standard repayment of debtors' loans with 9% interest would require monthly payments between $2,613.57 (over 25 years) and $3,945.16 (over 10 years). The court noted that ECMC also presented evidence of two income based repayment programs ("IBR") that would require debtors to pay between $605.20 and $907.80 monthly. The Bankruptcy Court rejected these options because it concluded that it did not constitute payment of the student loan. To the contrary the amount due would only increase if these payments were made, with the interest on the loans increasing by around $2000 a month. Judge Somers also noted that although the IBR programs provide for loan forgiveness after 25 years, there is the potential

-5-

that that forgiveness would come with a large tax liability, thwarting the purpose of providing a fresh start and potentially saddling defendants with a new tax debt in their early seventies.

The court agrees. Although ECMC argues that debtors should be required to participate in an IBR plan, the court finds that these debtors are not examples of the freshly graduated young people who might seek to discharge student loans in bankruptcy prior to reaching their full earning potential. These debtors are in their forties and are potentially settled into the jobs they will hold for the rest of their careers. Mr. Murray sought more gainful employment that unfortunately failed. They have reduced their expenses in recent years and Judge Somers found their standard of living minimal. The court agrees that debtors could not maintain a minimal standard of living if required to repay their loans in full, but that they could reasonably be required to pay the principal. The court declines to make any decision regarding the appropriateness of considering IBRs in other cases. But the court does finds that the IBR plans would thwart these debtors' chance at a fresh start, under the facts of this case.

### B. Whether debtors' circumstances are likely to persist

The second prong of the *Brunner* analysis "considers whether there are other circumstances making it likely that the debtor will not be able to pay his loans for a significant portion of the repayment period." As noted in *Polleys*, Congress's primary concern in adopting § 523(a)(8) was to "remove the temptation of recent graduates to use the bankruptcy system as a low-cost method of unencumbering future earnings." 356 F.3d at 1306.

The Tenth Circuit has explained that the second prong inquiry should involve a "realistic look" at debtors' circumstances and their "ability to provide for adequate shelter, nutrition, health care, and the like." *In re Alderete*, 412 F.2d 1200, 1205 (10th Cir. 2005). It further noted that "courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and

the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan."

Building on the Bankruptcy Court's findings under the first prong, Judge Somers determined that debtors' circumstances are likely to persist for a significant portion of the repayment period of their student loans. The bankruptcy court specifically noted that debtors are not recent graduates; they took out educational loans around twenty years ago; they are in their late forties; Ms. Murray's employer told her not to expect raises or promotions; Mr. Murray is employed by a community college whose funding is controlled by the state legislature, making raises unlikely; and that debtors' medical and dental expenses are only likely to increase in the future. The bankruptcy court found no facts in the record suggesting that debtors' circumstances are likely to improve based on decreased expenses. The bankruptcy court applied the correct test and listed specific articulable facts to support its conclusions. The court agrees with Judge Somers's findings and conclusions that debtors' circumstances are likely to persist.

### C. Whether debtors have made good faith efforts to repay the loans

The third prong of the *Brunner* analysis requires debtors to show that they have made a good faith effort to repay their loans. The Tenth Circuit instructs that the court's inquiry on the third prong "should focus on questions surrounding the legitimacy of the basis for seeking a discharge. For instance, a debtor who willfully contrives a hardship in order to discharge student loans should be deemed to be acting in bad faith." *In re Alderete*, 412 F.3d at 1206. On the other hand, a debtor's pre-bankruptcy efforts to cooperate with lenders may show their good faith attempts to repay. *Id.*

Judge Somers found that debtors made a good faith effort to repay their loans. In reaching this conclusion, the bankruptcy court noted that debtors have already paid over $54,000 of their student loan debt and that since they took out the loans they have either been current on their payments, or in

deferral or forbearance status. Judge Somers noted that debtors have no late charges in their payment histories. Around 2010, Ms. Murray inquired about and entered an IBR plan and debtors made payments under that plan until they filed for bankruptcy in 2014. The bankruptcy court specifically noted that under the IBR plan, all of debtors' payments went to interest payments and were insufficient to stop more interest from accruing. So the longer debtors paid under the IBR plan, the more they owed.

The bankruptcy court found that debtors' inability to pay was legitimate and not willfully contrived. Judge Somers found that debtors' inability to pay was caused by factors beyond their control, primarily the fact that people with masters in music degrees have low earning potential. The bankruptcy court found that debtors' low earning potential, combined with the size of the debt and the high interest rate resulted in failure of even their good-faith efforts to pay off their loans. The court also noted that the IBR plan and similar plans were unproductive alternatives to seeking discharge in bankruptcy, presumably because debtors would never have been able to pay off their loans, or even reduce the interest under an IBR plan.

The court agrees with Judge Somers's findings and conclusions that debtors made a good faith effort to repay their loans. The Tenth Circuit has noted that a debtor's participation in an IBR plan is not required but can be an important indicator of good faith. *In re Alderete*, 412 F.3d at 1206 (quoting *In re Alderete*, 289 B.R. 410, 420 (Bankr. D.N.M. 2002) (quoting *In re Wallace*, 259 B.R. 170, 185 (C.D. Cal. 2000))). ECMC's brief argues that none of debtors' loan, principal or interest, should be discharged, primarily arguing that even though debtors may not be able to reduce interest, they should be required to participate in an IBR plan of some type and pay on their loan. The court disagrees. Under the circumstances of this case, debtors' payments under an IBR plan are insufficient even to stop the accrual of additional interest, and such payments directly controvene the purpose of

bankruptcy. Judge Somers did not discharge all of debtors' student loans. He discharged that portion—the interest—that had become an undue hardship on debtors, denying them a fresh start. Debtors will still have to repay the principal balance on their student loans.

**IT IS THEREFORE ORDERED** that the Memorandum Opinion and Order Granting Partial Discharge of Student Loans issued by the Honorable Dale L. Somers, United States Bankruptcy Judge, is hereby affirmed. The parties' requests for oral argument are denied. The court does not find that oral argument would assist the court's findings on this matter. This case is closed.

Dated September 22, 2017, at Kansas City, Kansas.

                                                  s/ Carlos Murguia
                                                  **CARLOS MURGUIA**
                                                  **United States District Judge**